United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSMIN MELGAR,<br><br>        Plaintiff,<br><br>    v.<br><br>CSK AUTO, INC.,<br><br>        Defendant.<br>_____/ | No. C-13-3769 EMC<br><br>**ORDER RE DISCOVERY MATTERS**<br><br>**(Docket No. 29)** |

On February 27, 2014, the parties filed a joint letter which raised three discovery disputes that the parties have been unable to resolve through the meet and confer process. The Court rules on these disputes as follows.

A.  <u>Plaintiff is Entitled to Discovery on Putative Class Members' Contact Information</u>

Plaintiff seeks discovery of the contact information of all putative class members. Defendant argues, however, that because the putative class consists of current employees and because Plaintiff may seek to "impute" their actions or omissions (or knowledge) to Defendant, they are represented parties under the meaning of California Rule of Professional Conduct 2-100. Plaintiff is willing to forego informal contact with current store managers, so the question before the Court is whether Plaintiff is entitled to discovery of the contact information of Defendant's former employees and current "assistant mangers" and "key carriers." The Court finds that he is.

California Rule of Professional Conduct 2-100 generally prohibits an attorney from communicating with a "party the member knows to be represented by another lawyer in the matter,

unless the member has the consent of the other lawyer." Cal. Rule Prof. Conduct 2-100(A). Relevant to the instant dispute, this rule defines "party," in part as:

> An association member or an employee of an association, corporation, or partnership, if the subject of the communication is any act or omission of such person in connection with the matter which may be binding upon or imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

*Id.* 2-100(B)(2).

First, the Court finds that Defendant's former employees – including former store managers – do not fall within this provision. *See, e.g.*, *Lott v. United States*, No. C07-3530 PJH (EMC), 2008 WL 2923437 (N.D. Cal. July 25, 2008) ("Even if the witnesses are considered former employees of the United States . . . under California law, it is not a violation of any ethical rule, including California Rule of Professional Conduct 2-100, if an attorney contacts a former employee of the opposing party."); *Continental Ins. Co. v. Superior Court*, 32 Cal. App. 4th 94 (1995) ("[W]e believe that paragraph (B)(2) of rule 2-100 properly is construed to apply only to current employees.").

Second, with regard to current "assistant managers" and "key carriers," the Court begins by noting that the California Court of Appeals has, on more than one occasion, asserted that Rule 2-100(B)(2) is to be applied narrowly. *See Snider v. Superior Court*, 113 Cal. App. 4th 1187, 1251 (2003) ("Further, rule 2-100 must be interpreted narrowly because 'a rule whose violation could result in disqualification and possible disciplinary action should be narrowly construed when it impinges upon a lawyer's duty of zealous representation."); *Continental Ins.,* 32 Cal. App. 4th at 120 (rejecting a "broad or liberal interpretation of paragraph (B)(2)" to apply to former employees). Relevant to the instant employment-class action, the Court of Appeal in *Continental Insurance* expressly noted the ways in which ex parte communications with lower level corporate employees can further important policies:

> "[W]here many corporate employees potentially possess knowledge relevant to a claim against the corporation, ex parte communication would permit identification of those employees actually possessing such knowledge and would reduce the need for expensive and unnecessary formal depositions. Ex parte communication with willing lower-echelon employees also may guide counsel to other sources of information relevant to her client's claim against the corporation and

2

> would permit counsel to ascertain the employee's value as a witness for either side. Finally, ex parte communication would permit the attorney to prepare corporate employees who are to serve as friendly witnesses at trial."

*Continental Ins.*, 32 Cal. App. 4th at 121 (quoting Stephen M. Sinaiko, Note, *Ex Parte Communication and the Corporate Adversary: A New Approach*, 66 N.Y.U. L. Rev. 1456 (1991)).

Thus, in *Snider*, the Court of Appeal found that communications with a construction company's "sales manager" did not run afoul of Rule 2-100(B)(2) because the communications "did not concern her own actions or omissions concerning the dispute, but her percipient knowledge and understanding of events surrounding the dispute." *Id.* at 1210.

Allowing Plaintiff to contact current assistant managers or "key carriers" would not run afoul of paragraph (B)(2). First, while an assistant manager's "act" of making a bank run without being compensated may establish a predicate to civil liability, it is not an act that itself "binds" the company within the meaning of the Rule. Rather, this "act" is the harm allegedly suffered by the assistant manager at the hands of the Defendant.

To establish liability, Plaintiff would have to prove that (1) class members incurred expenditures, (2) that were incurred in direct consequence of the discharge of his or her duties, and (3) the expenditures or losses were necessary. *See Cassady v. Morgan, Lewis & Bockius LLP*, 145 Cal. App. 4th 220, 230 (2006). Additionally, as this Court has previously noted, the Plaintiff will have to show that Defendant knew or had reason to know that class members had incurred a reimbursable expense. *See Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901, 903 (N.D. Cal. 2009). Thus, in contrast to communications about an actual act of an assistant manager or key carrier which could be one predicate fact for establishing liability, testimony from one of Defendant's high-ranking officials regarding *their* knowledge that class members were not being reimbursed would more likely be legally binding or imputable to Defendant. So would testimony from high ranking managers who were aware of a general policy of failing to provide reimbursement and effectively ratified it. *See Snider*, 113 Cal. App. 4th at 1210   Accordingly, on the facts of this case and given

3

the substantive law, the Court finds that contacting assistant managers and key carriers regarding their percipient knowledge of facts related to the underlying dispute does not run afoul of Rule 2-100(B)(2).

Based on the above, the Court finds that Plaintiffs are entitled to discover the contact information of all putative class members who are: (1) former employees of Defendant for all purposes; or (2) assistant managers and key carriers to the extent the communication relates to those individuals' percipient knowledge of the underlying dispute and events.  These assistant managers and key carriers are not likely to have occupied such a high position in Defendant's organization that their knowledge of the alleged practice would be deemed legally binding.

As Plaintiff has apparently recognized, however, discovery of the putative class members' contact information implicates the privacy rights of the putative class members.  Accordingly, prior to the release of any contact information, the parties shall comply with the notice procedures discussed in *Belaire-West Landscape, Inc. v. Superior Court*, 149 Cal. App. 4th 554 (2007).

The parties shall meet and confer in light of this Court's guidance on the following issues: (1) the form of the *Belaire-West* notice to be distributed and (2) the form, manner, and questions Plaintiff's contact with putative class members will take.

B.  A Survey of Putative Class Members Is Appropriate to the Extent Defendant's Documentation Is Insufficient.

The Court agrees with Plaintiff that a survey of putative class members is appropriate to the extent that Defendant does not have sufficient documentation detailing the identity of employees who performed the bank deposits at issue, the frequency, etc.  Defendants' arguments about the probative scope of the evidence such surveys would reveal are better addressed at the class certification and summary judgment stage.

The parties shall meet and confer about whether the survey is necessary in light of the documentation Defendant represents it has and the form of any such survey.  This meet and confer process shall include Defendant providing Plaintiff with a reasonable sample of the documentation it contends includes the information Plaintiff seeks.

4

C.  Defendant Shall Produce a Sampling of 10% of Its Stores

Plaintiff seeks to have Defendant provide a sampling of mileage records from 15 to 20% of Defendant's 475 stores. Defendant, in turn, proposes to produce a sample of records from 10 of its stores. The Court orders Defendant to produce a sampling of mileage records from 10% of its stores. This sample of stores will include the Plaintiff's former store with the remainder of stores selected based on simple random sampling techniques.

In addition to the above, the parties shall meet and confer regarding the need for any extensions of discovery deadlines or the need to amend the discovery dates initially proposed by the parties in their February 27, 2014 letter.

IT IS SO ORDERED.

Dated: April 16, 2014

_____
EDWARD M. CHEN
United States District Judge

5