UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSMIN MELGAR, | No. C-13-3769 EMC |
|     Plaintiff, | |
| v. | **ORDER RE PRE-CERTIFICATION SURVEY OF PUTATIVE CLASS MEMBERS** |
| CSK AUTO, INC., | |
|     Defendant. | |

Pending before the Court is Plaintiff's request, raised in the November 6, 2014 Joint Case Management Statement, to take a survey of putative class members inquiring into whether they were required to use their personal vehicles to make bank deposits, the frequency with which they made such deposits, whether they requested and received reimbursement, etc. Defendants oppose Plaintiff's request for a survey. At the November 14, 2014 Case Management Conference, the Court heard extensive argument from both parties on this issue and ordered further briefing. Both sides have submitted briefing and proposed surveys.

The Court finds a survey appropriate in this case. Defendant essentially raises three substantive challenged to Plaintiff's survey request. First, Defendant argues that the Federal Rules of Civil Procedure do not recognize surveys as a discovery device. Dkt. No. 45, at 2 ("The F.R.C.P. do not provide for this form of 'discovery device.'"). The Court is unpersuaded. Numerous courts have recognized the use of surveys in the pre-certification context. *See, e.g.*, *Sirko v. Int'l Bus. Machines Corp.*, No. CV 13-03192 DMG SSX, 2014 WL 4452699, at *2 (C.D. Cal. Sept. 3, 2014) ("Plaintiffs' counsel designed and sent a preliminary survey to putative class members."); *Charlebois v. Angels Baseball, LP*, No. SACV 10-0853 DOC ANX, 2011 WL 2610122, at *5 (C.D.

Cal. June 30, 2011) ("Though the Court tentatively found numerosity at the January hearing on Plaintiff's Motion for Class Certification, the Court nonetheless requested that the parties cooperate to develop a survey to be sent to potential class members to help the Court in determining whether there is numerosity."); *D.S. ex rel. S.S. v. N.Y. City Dep't of Educ.*, 255 F.R.D. 59, 67 (E.D.N.Y. 2008) ("A detailed survey was sent to putative class members in 2007.").

Second, Defendants contend that Plaintiff's proposed survey would not be probative as to any of the class certification elements or merits questions. For the reasons discussed at the November 14, 2014 Case Management Conference, that is patently untrue. For example, Plaintiff's propose to ask, *inter alia*, the following questions:

- (1) In your job with CSK have you been required you [sic] drive your personal vehicle from work to the bank in order to make a deposit or obtain change?

- (2) If your answer to question 1 above is "yes," how frequently are/were you required to drive your personal vehicle to the bank?

- (4) If your answer to question 1 is "yes," what percentage of the time did you submit a Mileage Reimbursement form for use of your personal vehicle for trips to the bank?

Dkt. No. 44-1, at 1. At bare minimum, these question are relevant to determining whether the numerosity requirement of Rule 23(a)(1) is satisfied. The questions further serve to shed light as to whether common questions of fact – namely, were individuals required to use their personal vehicle to make bank deposits – exist. Further, these questions are also probative of at least some ultimate merits question. For example, evidence as to the frequency with which putative class members were allegedly required to use their personal vehicles to make bank runs and the extent to which reimbursement for those trips was sought would be relevant evidence as to whether Defendant knew or should have known that unreimbursed business expenses were being incurred. *See, e.g.*, *Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901, 903 (N.D. Cal. 2009).

Defendant's final argument is that any responses to the survey cannot, under the Supreme Court's holding in *Dukes v. Wal-Mart*, 131 S.Ct. 2541 (2011), be extrapolated on a class-wide basis. Dkt. No. 45, at 6. In *Dukes*, the Supreme Court – in the context of a Title VII disparate impact class action – found that statistics showing that Wal-Mart promoted women at a statistically significant

2

lower rate compared to national and regional data could not, on its own, establish that common questions existed. The Court stated:

> There is another, more fundamental, respect in which respondents' statistical proof fails. Even if it established (as it does not) a pay or promotion pattern that differs from the nationwide figures or the regional figures in *all* of Wal-Mart's 3,400 stores, that would still not demonstrate that commonality of issues exists. Some managers will claim that the availability of women, or qualified women, or interested women, in their stores' area does not mirror the national or regional statistics. And almost all of them will claim to have been applying some sex-neutral, performance-based criteria – whose nature and effects will differ from store to store. . . . Other than the bare existence of delegated discretion, respondents have identified no "specific employment practice" – much less one that ties all their 1.5 million claims together. Merely showing that Wal-Mart's policy of discretion has produced an overall sex-based disparity does not suffice.

*Id.* at 2555-56. Thus, the Supreme Court held that the statistics in that case could not provide a common answer as to why the putative class members had not been promoted. *Id.* at 2552 ("Without some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*.").

The fundamental flaw in Defendant's argument is that it essentially attacks the merits of Plaintiff's class certification motion before it has been drafted and before Plaintiffs have had the opportunity to conduct necessary discovery. Allowing Plaintiff to conduct this survey does not constitute a ruling on any substantive class certification issue nor does it absolve Plaintiff from meeting Rule 23's requirements at the class certification stage. Rather, the Court is simply allowing Plaintiff the opportunity to conduct fact discovery that he reasonably contends is necessary for him to meet the class certification burden. Ultimately, to the extent that Defendant feels that Plaintiff's class certification motion runs afoul of *Dukes*, it will be free to so argue once the motion has been brought and all supporting facts have been marshaled. This is no reason, however, to deny Plaintiff the opportunity to conduct factual discovery that is relevant to the Rule 23 inquiry as discussed

above.[1]  Tellingly, at the Case Management Conference, the Court asked Defendant's counsel how, if he were Plaintiff's counsel, he would go about attempting to meet his class certification burden in this case.  Defense counsel responded that he would call putative class members, interview them, and attempt to meet the burden in this way.  This is, in essence, what the proposed survey does but on a larger scale and in a fashion that is less intrusive to putative class members.

Accordingly, a survey will issue in this case.  Plaintiff, as the parting seeking to propound this survey, will bear all costs associated with producing and disseminating the survey.  Plaintiff shall retain a third-party administrator to disseminate the survey.

Further, the survey may only be distributed to those putative class members who received a *Belaire* notice and did not opt-out.  Retail Service Specialists did not receive the *Belaire* notice because Plaintiff did not discover that the Specialists had allegedly performed bank deposits until after the notice had been distributed.  Accordingly, prior to distribution of the survey, a new *Belaire* notice shall be distributed to the Retail Service Specialists to provide them an opportunity to opt-out of having their contact information shared with Plaintiff.  The survey shall not be distributed to Defendant's store managers.  The same concerns regarding contacts with a represented party that caused the Court to exempt store managers from the initial *Belaire* notice apply equally to the proposed survey.  To the extent that Plaintiff seeks discovery from Defendant's store managers, depositions are the proper vehicle

Finally, the Court will not prevent Plaintiff from distributing his version of the proposed survey. Defendant raises a number of challenges to the form and substance of Plaintiff's questions. As Plaintiff's discovery device, it is Plaintiff who runs the risk that his questions may be deficient, vague, or otherwise result in responses insufficient to meet his class certification burden.

---

[1] It is worth noting that there are decisions, post-*Dukes*, that have continued to recognize the continued viability of statistical data in Rule 23 analyses, at least in certain circumstances. *See, e.g.*, *Rodriguez v. National City Bank*, 726 F.3d 372, 386 n.15 (3d Cir. 2013) ("That is not to say that statistics could never be a viable element of proof of commonality in a disparate impact case. Indeed, several post-*Dukes* cases have relied on statistical analyses in their commonality determinations."). This is yet another reason why Defendant's *Dukes* argument is premature until Plaintiff has actually presented his evidence and arguments.

In light of the above, the parties are ordered to meet and confer and arrive at an agreement on the following: (1) A schedule for the revised *Belaire* notice that shall be distributed only to the Retail Service Specialists; (2) A schedule for the dissemination and return of Plaintiff's survey; and (3) a briefing schedule for Plaintiff's class certification motion. The parties shall file a stipulation that addresses these three schedules no later than **Wednesday, January 14, 2015** at **5:00pm**

IT IS SO ORDERED.

Dated: January 6, 2015

_____
EDWARD M. CHEN
United States District Judge