UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSMIN MELGAR, et al.,<br>　　　　Plaintiffs,<br>　　v.<br>CSK AUTO, INC.,<br>　　　　Defendant. | Case No. 13-cv-03769-EMC<br><br>**ORDER RE SUPPLEMENTAL BRIEFING FOR PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL**<br><br>Docket No. 149 |

Plaintiffs have moved for preliminary approval of a class action settlement. Having reviewed the motion and supporting documents, the Court hereby orders that the parties provide a joint supplemental brief addressing the following.

A.　Maximum Value of Plaintiffs' Claims

Plaintiffs claim that the maximum value of their § 2802 and § 17200 claims is $1,275,723.83. *See* Mot. at 6. Plaintiffs shall explain how they arrived at this figure. To the extent Plaintiffs arrived at this figure based on certain assumptions (*e.g.*, 1,193,694 bank days and 2,338,672.9 miles), they shall explain how they arrived at these supporting assumptions. It will also be helpful for the Court to be given information about how many California stores are at issue and, in general, how close the relevant banks were to the stores.

In addition to the above, Plaintiffs shall identify what the maximum value of their PAGA claim is and how they arrived at that figure.

B.　Litigation Risks

Although Plaintiffs have identified litigation risks in their papers, *see* Mot. at 3, 6, 14-15, they have not addressed how they evaluated those risks – *i.e.*, how significant those risks were.

For example, Plaintiffs take note of OR's claim that "it would not know or have reason to know that . . . expenses were being incurred," Mot. at 3, but this defense is arguably of questionable merit based on the evidence that was provided to the Court during class certification proceedings. *See* Docket No. 98 (Order at 3) (taking note of testimony from OR's 30(b)(6) witness that district managers (*i.e.*, the managers above the Store Managers) are aware that employees are expected to make daily bank deposits). Plaintiffs also represent that OR provided evidence showing that many class members were reimbursed for mileage expenses but they have not explained whether that is consistent with the evidence that they acquired from class members (*e.g.*, through surveys). In addition, Plaintiffs indicate that some class members could walk to banks but it is not clear how often that was the case (*e.g.*, on average, were banks within walking distance from the stores?). To the extent OR maintains that class members could use company vehicles to make deposits, Plaintiffs have not addressed whether that comports with the evidence that they acquired from class members.

Both parties shall address the significance of the litigation risks identified in Plaintiffs' motion. The Court underscores that the significance of the litigation risks is an important factor in assessing whether it was reasonable for Plaintiffs to settle the case for (allegedly) 30% of the maximum value of the case.

C. <u>PAGA Claim</u>

The parties shall address the adequacy of the settlement with respect to the PAGA claim. *See generally Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 U.S. Dist. LEXIS 140759, at *28 (N.D. Cal. Oct. 11, 2016) (stating that, "in evaluating the adequacy of a settlement of a PAGA claim, courts may employ a sliding scale, taking into account the value of the settlement as a whole[;] [t]hus, where a settlement for a Rule 23 class is robust, the statutory purposes of PAGA may be fulfilled even with a relatively small award on the PAGA claim itself, because such 'a settlement not only vindicates the rights of the class members as employees, but may have a deterrent effect upon the defendant employer and other employers, an objective of PAGA'").

D. <u>Plan of Distribution</u>

The plan of distribution gives greater weight to the interests of the Store Managers over those of the Assistant Store Managers and Retail Service Specialists in recognition of the fact that Store Managers were usually the employees responsible for doing bank deposits. However, as the Court noted in its certification order, the status of a Store Manager is somewhat complicated to the extent that his or her knowledge of whether expenses were incurred could be imputed to OR.

Plaintiffs shall address whether and how the potential conflict and risk with respect to Store Managers were taken into account in the plan of distribution.

E. <u>Attorney's Fees</u>

Plaintiffs have indicated that, under the settlement agreement, the fee award may be as high as 1/3 of the gross settlement fund. Although the Court is not requiring Plaintiffs, at this juncture, to file their fee motion, it does need more information from Plaintiffs, particularly as they may seek more than the 25% benchmark recognized by the Ninth Circuit. In particular, Plaintiffs shall provide information about the lodestar in this case – *e.g.*, the hourly rates, the total number of hours, and an estimate as to how much time was spent on each major litigation task (*e.g.*, investigating and preparing the complaint, working on the class certification motion, working on the appeal).

F. <u>Incentive Awards</u>

Plaintiffs have asked for incentive awards that are significantly higher than the average award for each class member. The incentive awards also exceed the amount that is presumptively reasonable in this District (*i.e.*, $5,000). Plaintiffs shall address why the incentive awards are reasonable, taking into account, *inter alia*, that they no longer work for OR, whether they plausibly have other claims against OR that are being released (as part of the broader release to which they, and not other class members, agreed), and how many actual hours Plaintiffs actually spent on the case.

G. <u>Cy Pres Beneficiaries</u>

Plaintiffs shall address why United Way and Legal Aid at Work are appropriate cy pres beneficiaries. *See Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (noting that "[n]ot

just any worthy recipient can qualify as an appropriate *cy pres* beneficiary" and that there must be "'a driving nexus between the plaintiff class and the *cy pres* beneficiaries'"; "[a] *cy pres* award must be 'guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members' and must not benefit a group 'too remote from the plaintiff class'"); *see also Nachshin v. AOL, Ltd. Liab. Co.*, 663 F.3d 1034, 1036 (9th Cir. 2011) (stating that "[t]he *cy pres* doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries").

H. Reminder Postcard

The parties shall address whether a reminder postcard should be issued by a date certain if no response to the class notice has been received from a given class member.

I. Time to Cash Check

The parties shall address whether class members should be given longer than 120 days to cash checks.

J. Proposed Class Notice

- Page 1. The first paragraph should include in bold the estimated average payout per class member.
- Page 1. The chart explaining a class member's options should be modified. In particular, the "object" option should clarify that an objecting class member remains part of the class and should still file a claim form in order to receive payment from the settlement.
- Pages 4-6. In Questions 10, 14, and 15, should a class member be given more than forty-five (45) days to file a claim, request for exclusion, or objection?
- Page 6. In Question 15, the text should clarify that an objecting class member remains part of the class and should still file a claim form in order to receive payment from the settlement.

///

///

///

4

- Page 6. In Question 16, will there be a website maintained by the settlement administrator?

The supplemental brief shall be filed within one week of the date of this order.

**IT IS SO ORDERED**.

Dated: May 25, 2018

_____
EDWARD M. CHEN
United States District Judge